UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARD SMITH, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 05-919-RET-DLD** |
| **NEW LEAF ASSOCIATES, L.L.C.** | |

## MAGISTRATE JUDGE'S REPORT

This matter is before the court on a motion for summary judgment (rec. doc. 81) filed by Quantum Business Consultants, L.L.C. (Quantum). The motion is opposed (rec. doc. 84).

**Factual Background**

Since October 2003, New Leaf Associates, L.L.C. (New Leaf) has been providing debt elimination/debt termination services to consumers (rec. doc. 2). Consumers obtain the services provided by New Leaf for an up-front fee of $3,795.05 to $5,295.95, depending on the amount of the consumer's debt. Id. Quantum Business Consultants, L.L.C.[1] (Quantum) allegedly operates as the marketing division for New Leaf (rec. docs. 1, 2). Plaintiffs allege that Quantum introduces third-parties, known as "Coordinators," to New Leaf's debt elimination program, and the Coordinators[2] sell and market New Leaf's program to consumers (rec.doc. 2).

---

[1] Quantum Business Consultants, L.L.C. was originally incorrectly named as Quantum Business Associates (rec. doc. 1). Quantum is a limited liability company organized under the laws of Florida.

[2] Plaintiffs allege that Ameribiz Consulting, Inc., Paul Greaves, B & B Enterprises International, Inc., Chris Holland, Ken Keplinger, Legal Club Financial Corporation, Manhattan Financial Group, L.L.C, RWS, Kris Schnel, Chad Polley, and Cecil Taylor all served as Coordinators for the New Leaf program; therefore, they were named as defendants in the first supplemental and amending petition for damages - class action.

During 2004 and 2005, plaintiffs[3] allegedly entered into agreements with New Leaf and/or Quantum for assistance in terminating their debts without damage to their credit reports. Plaintiffs allege that neither New Leaf nor Quantum made any attempt to terminate their debts, and defendants also failed to take action to prevent damage to plaintiffs' credit rating. Although New Leaf, Quantum, and Thomas Spiller (Quantum's sole manager, Secretary, and Treasurer) allegedly represented that they were successful in eliminating debt for thousands of customers, plaintiffs claim that they never eliminated, terminated, or liquidated a single debt through the use of their "administrative process."

Plaintiffs brought suit against defendants[4] alleging that defendants have conspired in a scheme to commit fraud, including committing mail fraud and violations of the Racketeer Influenced Corrupt Organizations Act (rec. doc. 68). Plaintiffs seek damages in the form of interest, fees and late charges associated with the accounts that defendants directed plaintiffs not to pay, mental anguish, injury to credit rating, damage to reputation, and increased cost of unassociated credit (rec. doc. 1).

On April 2, 2007, plaintiffs dismissed Thomas Spiller because they were unable to serve him with the complaint (rec. doc. 58). Thereafter, on April 21, 2007, Quantum filed a motion for summary judgment seeking to have plaintiffs' claims against it dismissed because the wrongful acts allegedly committed by defendants took place prior to the time

---

[3] Plaintiffs are Richard Smith, Kelline Smith, Kevin Gunnip, Sarah Gunnip, Randy Davis, Thester Davis, Clara Paulette Steely, Stephen Brower, Cindy Brower, Mike Knop, and Audra Knop.

[4] Plaintiffs originally brought this suit as a class action against New Leaf, James Patterson, Quantum, Thomas Spiller, Ameribiz Consulting, Inc., Luke Anastasakis, Manhattan Financial Group, L.L.C., Phillip Plastic, Ken Keplinger, Chris Holland, Paul Graves, Legal Club Financial Corporation, Brett Merl, Kris Schnell, Cecil Taylor, B & B Enterprises International, Inc., George Gute, Chad Polley (rec. doc. 2). Plaintiffs, however, never certified the class.

Quantum was organized. On May 15, 2009, plaintiffs filed an amended complaint that again joined Spiller as a party-defendant and alledged that as the principal of Quantum who engaged in business on behalf of Quantum before the company was actually organized, Spiller is liable for Quantum's debts (rec. doc. 90).

Quantum's motion for summary judgment is before the court for a report and recommendation.

**Arguments of the Parties**

Defendant Quantum offers the articles of organization filed with the Florida Department of State on March 21, 2005, to prove that it is a Florida limited liability company (rec. doc. 81-2, Exhibit A). Quantum notes that plaintiffs' complaint alleges that "New Leaf and Quantum conspired to commit fraud against plaintiffs since at least October 2003." Id., citing rec. doc. 68. Quantum argues that since it did not exist as a legal entity when the allegedly wrongful acts took place, it cannot be held liable for any wrongdoing that occurred prior to the date of its formation on March 21, 2005. Furthermore, Quantum suggests that plaintiffs cannot prove that Quantum was engaged in wrongful acts after March 21, 2005, including accepting and negotiating funds transmitted to it by plaintiffs. Thus, Quantum seeks an order granting its summary judgment and dismissing it from this action.

Plaintiffs respond by arguing that Thomas Spiller, who was the principal operating manager, secretary, and treasurer for Quantum at the time of its formation, began doing business as Quantum Business Consultants, L.L.C. before the company was actually formed. Thus, plaintiffs suggest that Spiller is "jointly, severally, and solidarily liable" with Quantum for plaintiffs' damages (rec. doc. 84). Plaintiffs suggest that an entity holding itself out as Quantum received checks made payable to Quantum from plaintiffs prior to its

formation and deposited those checks into an account opened by Spiller. Citing both Louisiana and Florida law, plaintiffs argue that Spiller is personally liable for the debts of Quantum because he engaged in business on behalf of Quantum before it was formally registered. Plaintiffs offer the affidavit of Victor Morrell, a non-party to the litigation, to prove that Quantum engaged in wrongful acts in furtherance of the debt elimination scheme after its formation; therefore, Quantum should be held liable for its wrongful acts that cause plaintiffs' damages.

### Summary Judgment Standard

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Federal Rule of Civil Procedure 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of its pleadings, but rather must come forward with "specific facts" showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, summary judgment must be entered against the plaintiff herein, on a properly supported defense motion, if they fail to make an evidentiary showing in their opposition to the motion sufficient to establish the existence of an element essential to her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The opposing party must come

forward with competent evidence, such as affidavits or depositions, to buttress his claims.

**Substantive Law and Discussion**

Quantum is a limited liability company organized under the laws of Florida (rec. doc. 81-2, Exhibit A). Quantum's articles of organization were filed on March 21, 2005. Id. Thomas Spiller was the operating manager, secretary, and treasurer at the time of Quantum's formation. Id. Pursuant to the laws of Florida, a limited liability company's existence begins at the date and time when the articles of organization are filed, unless there is a delayed effective date. See Fla. St. §608.409. Quantum's articles of organization do not contain a delayed defective date; thus, Quantum's existence began on March 21, 2005. A limited liability company is prohibited from transacting business or incurring debts, except that which is incidental to its organization or to obtaining subscriptions for or payment of contributions, until the effective date and time of the commencement of the limited liability company's existence. See Fla. St. §608.409(4). Furthermore, Florida law imposes liability on persons acting on behalf of a limited liability company if they have actual knowledge that the limited liability company was not organized, except for liability to persons who also had actual knowledge that there was no organization. Specifically, Section 608.4238 provides as follows:

> All persons purporting to act as or on behalf of a limited liability company, having actual knowledge that there was no organization of a limited liability company under this chapter, are jointly and severally liable for all liabilities created while so acting except for any liability to any person who also had actual knowledge that there was no organization of a limited liability company.

Thus, Quantum could not transact business or incur indebtedness, except that which is incidental to its organization or to obtaining subscriptions for or payment of contributions,

until March 21, 2005. There are no allegations that the business allegedly conducted by Quantum prior to its organization was incidental to its formation. If plaintiffs are able to prove that Spiller transacted business on behalf of Quantum prior to the date of its organization, and Spiller had actual knowledge that Quantum was not organized, Spiller could be held personally liable for any wrongful acts committed prior to Quantum's organization, unless plaintiffs also knew that Quantum was not organized at that time. If plaintiffs can prove that Quantum committed wrongful acts while transacting business after its organization, Quantum can be held liable for damages associated with those wrongful acts.

Plaintiffs never clearly state or provide any competent evidence establishing the actual dates that Quantum and/or Spiller conducted business with the named plaintiffs. Plaintiffs admit in their opposition memorandum that Quantum "received checks from plaintiffs in this matter, prior to being incorporated through the Department of State, State of Florida" (rec. doc. 84). Plaintiffs allege in two of their amended complaints that Quantum and New Leaf have conspired to commit fraud since October 2003 (rec. docs. 2 and 68). Plaintiffs also allege in their original complaint that plaintiffs entered into contracts for debt termination services with New Leaf and/or Quantum in 2004 and 2005. Finally, plaintiffs allege that Quantum has served as the marketing division of New Leaf "since at least March 2005, and earlier, based on information and belief" (rec. doc. 68). None of these allegations, however, are supported by documentation or competent evidence that can be used in the instant motion. Indeed, plaintiffs have failed to offer any evidence that Quantum engaged in business with the them either before or after it was organized. At the summary judgment stage, plaintiffs can no longer rely on bare allegations in their

complaints regarding when Quantum engaged in business and allegedly committed wrongful acts, but must come forward with evidence to support their allegations.

The one piece of evidence that plaintiffs offer is the affidavit of Victor Morrell, who is not a party to this litigation, supposedly in support of their claims that Quantum engaged in wrongful acts after its organization. Morrell states that on May 9, 2005, he obtained a cashier's check in the amount of $3,795.95 made payable to Quantum; he mailed the cashier's check and application to Quantum; and he received no relief. (rec. doc. 81-2, Exhibit A). Although Morrell states that the application was received by Thomas Spiller in his capacity as operating manager, secretary, and treasurer of Quantum, he does not offer any facts, such as certified mail receipt or other competent evidence, to support his opinion that Quantum received the check. Merely saying something in affidavit form does not automatically make it competent evidence.

Morrell's affidavit is not sufficient to defeat Quantum's motion for summary judgment. At most it shows that a non-party mailed a cashiers check and an application to Quantum, and he never received any relief from his debts. It does not establish that Quantum received the check or negotiated it. But more importantly, even if the affidavit showed more, it is irrelevant to plaintiffs claims against Quantum. That Quantum may have wronged someone else is not proof that Quantum committed wrongful acts as to plaintiffs. The plaintiffs' burden was to come forward with competent evidence sufficient to raise an issue of material fact with regard to Quantum's liability to plaintiffs – not Quantum's possible liability to a non-party to the litigation. Plaintiffs have failed to offer evidence indicating that Quantum engaged in business in furtherance of the allegedly fraudulent scheme with one

of the named plaintiffs after March 21, 2005, or that it had an ongoing relationship with one of the plaintiffs after March 21, 2005.

### Conclusion

Based on Florida law and the facts of this case, Quantum could not legally engage in business prior to March 21, 2005, and if Spiller performed acts on behalf of Quantum prior to that date, Spiller could be potentially liable for any wrongdoing associated with his actions.  Plaintiffs have failed to produce competent evidence indicating that Quantum engaged in business in furtherance of the allegedly fraudulent scheme with one of the plaintiffs after the date of its organization.  Thus, plaintiffs' claims against Quantum should be dismissed.  Accordingly,

**IT IS RECOMMENDED** that Quantum Business Consultants, L.L.C.'s motion for summary judgment (rec. doc. 81) should be **GRANTED**, and plaintiffs' claims against Quantum Business Consultants, L.L.C. should be dismissed, with prejudice.

Signed in Baton Rouge, Louisiana, on July 1, 2009.

**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RICHARD SMITH, ET AL**                    **CIVIL ACTION**

**VERSUS**                                  **NUMBER 05-919-RET-DLD**

**NEW LEAF ASSOCIATES, L.L.C.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on July 1, 2009.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**