# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RICHARD SMITH, et al | CIVIL ACTION NO. 3:05-00919 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| NEW LEAF ASSOCIATES, LLC et al | MAG. JUDGE STEPHEN C. RIEDLINGER |

## MEMORANDUM RULING

Before the Court are the following outstanding motions: Plaintiffs' Motion for Summary Judgment [Record Document 120]; Plaintiffs' Motion for Partial Summary Judgment [Record Document 131]; and Plaintiffs' Amended Motion for Summary Judgment [Record Document 146]. Defendants oppose the motions [Record Documents 157, 158]. For the reasons that follow, all three motions are hereby **DENIED**.

## PROCEDURAL HISTORY

This suit was originally filed in 2005 and has endured a long and winding road to reach this point. For purposes of this ruling, we need not trace that road in great detail, except to the extent that it is relevant to the motions pending before the Court.

Since the filing of the initial complaint on June 29, 2005, there have been five amended complaints filed.[1] There are three motions for summary judgment pending;[2] however, Plaintiffs acknowledge that the first two motions address only Defendant

---

[1] Record Documents 2, 68, 90, 105, and 147.

[2] Record Documents 120, 131, and 146.

Spiller and are nearly identical, save for the attachment of two affidavits to the later-filed motion.³ The third and final motion pending before the Court amends the prior motions to include Defendant Gute.⁴ For purposes of this ruling and for ease of discussion, the Court will address all three motions in globo.

This case was reassigned to the undersigned judge, and a scheduling conference was held on January 23, 2012.⁵ At that conference, the Court recommended that the Defendants, both of whom appear pro se in this matter, attempt to obtain counsel and/or avail themselves of free legal services. The Court further advised the Defendants that their subsequent decision to proceed pro se would not excuse any Defendant from being familiar with the record in this case.⁶

## BACKGROUND FACTS

Plaintiffs claim to be the defrauded purchasers of a promised "debt-elimination" package, who are now seeking damages from the remaining Defendants, Tom Spiller⁷

---

³ Referring to Record Documents 120 and 131; see also Record Document 136, ¶ 6.

⁴ Record Document 146.

⁵ Record Document 138.

⁶ The Court acknowledges Defendant Spiller's claim that he and Defendant Gute "have exhausted every effort to find pro bono legal assistance at the federal level, to no avail in Louisiana, Mississippi, Georgia and Florida." See Record Document 155.

⁷ Although Plaintiffs never certified the class, this lawsuit was originally brought as a class action, naming "Thomas Spiller" among other Defendants. After many failed attempts to serve Spiller, Plaintiffs moved to dismiss Spiller from the suit on April 2, 2007 [See Record Document 57]. Plaintiffs then filed an amended complaint, naming "Thomas Spiller" as a Defendant [Record Document 68]. Thereafter, a third amended complaint filed on May 15, 2009 again joined "Tom Spiller" as a party-Defendant [Record Document 90].
Page 2

and George W. Gute.[8] Plaintiffs contend that, since 2003, New Leaf Associates, L.L.C.[9] ("New Leaf") has offered debt-elimination/debt-termination services to consumers.[10] Plaintiffs also contend that the Defendants conspired with James Patterson and New Leaf to offer these debt-elimination packages in exchange for a lump sum purchase price; however, no such service was ever provided by the Defendants. New Leaf allegedly acted through several "coordinators," which were independent agents selling and marketing New Leaf's program to the general public.[11] Plaintiffs allege that Spiller and Gute acted as agents of one such coordinator, "Quantum Business Consultants, L.L.C." ("Quantum") which operated as the marketing division for New Leaf.[12] Spiller

---

[8] As represented by Plaintiffs' ex parte memorandum to the Court dated January 13, 2012 [Record Document 136], the only remaining Defendants in this case are Tom Spiller and George W. Gute. The docket reflects that B&B Enterprises International, Inc. ("B&B") is still a named Defendant in this matter, as are Ken Keplinger, James M. Patterson and New Leaf Associates, LLC ("New Leaf"). James Patterson and New Leaf were both served on April 6, 2006 [Record Documents 30 and 31] but have never formally appeared in this matter. Defaults were entered against James Patterson and New Leaf on January 19, 2007 [Record Document 49] and against Ken Keplinger on January 23, 2007 [Record Document 53]. B&B was originally represented by counsel in this matter; however, said counsel withdrew from the case on July 19, 2006 with no replacement [Record Document 39]. The Court notes that B&B may not appear in federal court without an attorney. See Memon v. Allied Domecq QSR, 385 F.3d 871, 873 (5th Cir. 2004)(citing Rowland v. California Men's Colony, 506 U.S. 194, 202 (1993)("the lower courts have uniformly held that 28 U.S.C. §1654 ... does not allow corporations, partnerships, or associations to appear in federal court otherwise than by licensed counsel")). Although B&B is still officially listed as a Defendant in this case, and was acknowledged by the Court as such [See Record Document 138], Plaintiffs seem to have abandoned their case against B&B.

[9] Plaintiffs initially filed suit against this party as "New Leaf Associates, L.L.C." but have since referred to New Leaf as "New Leaf Associates, Inc." [See, e.g. Record Document 147, ¶ G] and "New Leaf Corporation" [See, e.g. Record Document 136, p. 7]. As both the docket and the clerk's entry of default refer to New Leaf Associates, L.L.C., this Court will do so as well.

[10] Record Document 2, ¶ IV; Record Document 68, ¶ III.

[11] Record Document 2, ¶¶ XI-XIV.

[12] Record Document 147, ¶ B. See also Record Document 94, p. 6 and Record Document 102 (Quantum was dismissed from this suit on August 12, 2009, as Plaintiffs had "failed to offer any evidence that Quantum engaged in business with [] them either before or after it was organized.").

and Gute, through Quantum, allegedly advertised termination of debt without damage to the individual debtor's credit score. Plaintiffs claim that Spiller and Gute conducted business through Quantum prior to its formation. Plaintiffs thus claim that Spiller and Gute are personally liable for any actions "conducted in [only their] personal names or in the name of [Quantum]."[13]

Plaintiffs claim that the Defendants collected the up–front fees from the Plaintiffs, which ranged from $3,795.95 to $5,295.95, depending on the amount of the consumer's debt.[14] However, Plaintiffs further claim that the service and related process advertised by New Leaf was fictional from the outset and that New Leaf has never eliminated or attempted to eliminate debt through its purported "administrative process."[15]

Plaintiffs allege that Defendants have conspired in a scheme to commit fraud, including mail fraud and violations of the Racketeer Influenced Corrupt Organizations Act, the Louisiana Unfair Trade Practices Act, and the Credit Repair Organizations Act. Plaintiffs further allege that both Spiller and Gute were principals and agents of Quantum, based on their supposed receipt of money in the name of Quantum prior to its formation.[16] Plaintiffs submit that both Spiller and Gute have confessed judgment in a related case, captioned State of Florida, Office of the Attorney General, Dept. of Legal

---

[13] Record Document 147, ¶ B; see also FN 7, supra.

[14] Record Document 2, ¶ IV.

[15] Record Document 2, ¶¶ IX-X.

[16] Record Document 146.

Affairs v. New Leaf Associates, LLC, et al, Case No. 05-4612-CI-20, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida.[17] Plaintiffs allege that said judgments are dispositive of the liability issues against each Defendant and should be given res judicata effect in this case.[18] Plaintiffs seek damages in the form of interest, fees, and late charges associated with the accounts that Defendants directed Plaintiffs not to pay; mental anguish; injury to credit rating; damage to reputation; increased cost of unassociated credit; and attorneys fees under the Louisiana Unfair Trade Practices Act.[19] On the other hand, as the Court understands the Defendants' oppositions, their principal defenses to the Plaintiffs' claims are a general lack of agency and the absence of res judicata.[20]

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either

---

[17] Record Documents 146-3 and 146-4.

[18] Record Document 146, ¶¶ 6, 7; Record Document 136.

[19] Record Document 1, ¶ XVII.

[20] The Defendants were advised, at the January 23, 2012 scheduling conference, that a proper presentation of their defenses required a response to Plaintiffs' motions, along with attached affidavits and documentation to support their opposition. [See Record Document 138].

[21] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

Page 5

Case 3:05-cv-00919-EEF-SCR   Document 159   03/19/13   Page 5 of 12

party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the movant carries its initial burden, it is incumbent upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Such a showing requires the non-moving party to come forward with "specific facts" showing there is a genuine issue for trial. Id. at 587. This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)(citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986)(the court must "review the facts drawing all inferences most favorable to the party opposing the motion").

## LAW AND ANALYSIS

As demonstrated in Plaintiffs' Memorandum in Support of Motion for Summary Judgment, the Plaintiffs' motion boils down to the following two arguments. First,

Plaintiffs argue that the "Joint Stipulation for Settlement and Consent Final Judgment" as to Defendant Spiller[22] and the "Stipulation for Settlement with Defendants George W. Gute and B&B Enterprises International, Inc." as to Defendant Gute[23] should be dispositive as to the liability issues in this case. Second, Plaintiffs point to the July 10, 2009 Motion for Partial Summary Judgment, filed by the Plaintiffs,[24] and the Court's subsequent dismissal without prejudice on the grounds that "[t]here [had] been no responsive pleadings filed by Spiller in this matter."[25] Focusing on that language, Plaintiffs then recognize Spiller's later appearance in this matter as having consented to jurisdiction and venue and "made an appearance for service of process."[26] When these statements are read in the context of Plaintiffs' memorandum, it is clear that the Plaintiffs mistakenly assumed that their only hurdle to summary judgment was the lack of responsive pleadings filed by Spiller.

Taking these two points out of turn, we first address Plaintiffs' position that the case is now ripe for summary judgment, because Spiller has filed responsive pleadings. Substantively, the new evidence attached to the Motion for Summary Judgment consists of the affidavits of two named Plaintiffs, Andrew Cooper and Sonia Meche.[27] Plaintiffs

---

[22] Record Documents 131-2, 146-3.

[23] Record Document 146-4.

[24] Record Document 98.

[25] Record Document 131-6 (citing Record Document 115, Magistrate Judge's Report, later adopted by the Court at Record Document 130).

[26] Id.

[27] Record Documents 131-4 and 131-5.

rely on these two affidavits to support all Plaintiffs' claims that Spiller and Gute were agents and principals of both New Leaf and Quantum and likewise received money, both in their own names and in the names of New Leaf and Quantum. However, the affidavits prove no such thing. Both affidavits purport to show, through attached copies of cashier's checks, that Defendant Spiller received and deposited money from each of these Plaintiffs. However, as to Andrew Cooper, the attachment merely shows a copy of a check made payable to "Quantum Business Consultants," with no related certified mail receipt.[28] Similarly, attached to the affidavit of Sonia Meche is a cashiers check, made payable to "Quantum Business Consultants," with a certified mail receipt addressed to New Leaf and ostensibly signed by "J M Patterson," upon its receipt on July 28, 2005.[29] Even if the veracity of the two affidavits was strong, Plaintiffs' general allegations of collusion between the Defendants, New Leaf, Quantum, and James Patterson are simply not supported by documentation that can be used to support the instant motions.

"While it is presumed that a properly-addressed piece of mail placed in the care of the Postal Service has been delivered, no such presumption of delivery exists for certified mail when the requested return receipt is not received by the sender." Mulder v. C.I.R., 855 F.2d 208, 212 (5th Cir. 1988). Here, one affidavit lacks a certified mail receipt entirely, and the other fails to show any alignment between the entity to whom the check was drafted and the entity to whom the certified mail was delivered. Clearly, neither affidavit conclusively proves that Spiller or Gute received either check, much

---

[28] Record Document 131-4.

[29] Record Document 131-5.

less negotiated either check. As stated in prior rulings by the Court, merely stating something in affidavit form does not transform incompetent evidence into its competent counterpart.[30] Having determined that the affidavits serve no evidentiary function for purposes of the motions now pending, Plaintiffs' only remaining documentation offered in support thereof are the stipulated settlements filed in the Florida case.

As mentioned above, Plaintiffs contend that the Florida settlements have res judicata effect in this case and are dispositive of the liability issues concerning each Defendant. "A federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." E. D. Sys. Corp. v. Sw. Bell Tel. Co., 674 F.2d 453, 457 (5th Cir. 1982) (citing 28 U.S.C. § 1738; Rollins v. Dwyer, 666 F.2d 141, 144 (5th Cir. 1982)). Here, the relevant judgments were issued in a Florida state court. "The doctrine of res judicata serves an important purpose in the judicial system of [Florida]". Engle v. Liggett Group, Inc., 945 So. 2d 1246, 1259 (Fla. 2006). "The foundation of res judicata is that a final judgment in a court of competent jurisdiction is absolute and settles all issues actually litigated in a proceeding as well as those issues that could have been litigated." Id. The Supreme Court of Florida has explained the doctrine of res judicata as follows:

> A judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every

---

[30] See Record Document 94, addressing similar evidentiary issues in ruling on the motion for summary judgment filed by Quantum.

Page 9

Case 3:05-cv-00919-EEF-SCR   Document 159   03/19/13   Page 9 of 12

> other matter which might with propriety have been litigated and
> determined in that action.

Id. (citing Fla. Dep't of Transp. v. Juliano, 801 So.2d 101, 105 (Fla. 2001) (alteration in original) (quoting Kimbrell v. Paige, 448 So.2d 1009, 1012 (Fla. 1984)).

"Four identities are required for res judicata to be applicable to a case: '(1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the actions; and (4) identity of the quality or capacity of the persons for or against whom the claim is made.'" Freehling v. MGIC Fin. Corp., 437 So.2d 191, 193 (Fla. 4th DCA 1983) (quoting Seaboard Coast Line R.R. Co. v. Indus. Contracting Co., 260 So.2d 860, 862 (Fla. 4th DCA 1972)).The policy "underlying res judicata is that if a matter has already been decided, the petitioner has already had his or her day in court, and for purposes of judicial economy, that matter generally will not be reexamined again in any court (except, of course, for appeals by right)." Topps v. State, 865 So.2d 1253, 1255 (Fla. 2004) (emphasis in original).

It is clear from the jurisprudence that proper application of res judicata requires mutuality of parties; thus, the Plaintiffs' absence from the Florida litigation precludes them from asserting res judicata in the case sub judice. Furthermore, the requirement of the identity of the cause of action asks "whether the facts or evidence necessary to maintain the suit are the same in both actions." Albrecht v. State, 444 So.2d 8, 12 (Fla. 1984). Plaintiffs have failed to provide any documentation regarding the substance of the Florida litigation; therefore, there is no basis in the record to find that this case meets the requirement of a common identity between the two causes of action.

Although the Court finds that the Florida judgments have no res judicata effect in this lawsuit, the Court is compelled to point out a fatal flaw in Plaintiffs' underlying argument. Each agreement, on its face, fails to dispose of the issue of liability as it concerns each of the Defendants in this case. The relevant paragraph from the "Joint Stipulation for Settlement and Consent Final Judgment" regarding Defendant Spiller reads as follows: "Thomas Spiller, Linda Spiller, Quantum, and Sapphire do not admit liability for any of the claims in this action."[31] Likewise, the relevant paragraph from the "Stipulation for Settlement with Defendants George W. Gute and B&B Enterprises International, Inc." regarding Defendant Gute reads as follows:

> "It is fully understood and agreed that this settlement is not to be construed as an admission of liability on the part of the party or parties hereby released, and that Gute and B&B deny liability and intend merely to avoid litigation and resolve their issues with respect to [sic] Attorney General."[32]

Thus, we decline to deviate from the plain language of the settlement agreements, although such a finding is unnecessary having determined that the judgments lack res judicata effect in the present matter before this Court.

## CONCLUSION

To support a motion for summary judgment, "the moving party [has] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodge[s] must be viewed in the light most favorable to the opposing party." <u>Adickes v. S.H. Kress & Co.,</u> 398 U.S. 144, 157 (1970). Bearing in mind

---

[31] Record Document 146-3, ¶ 7.

[32] Record Document 146-4, ¶ 17.

the Plaintiffs' burden, the Court hereby finds that Plaintiffs have wholly failed to carry their burden of proof against the remaining two Defendants on summary judgment. Although Plaintiffs have made plenty of colorful allegations against the remaining two Defendants, the record is simply devoid of competent evidence to support the motions before us. Plaintiffs' Motions for Summary Judgement and Partial Summary Judgment [Record Documents 120, 131, and 146] are hereby **DENIED.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 19th day of March, 2013.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE